OSBORNE v. TEXAS TRACTION CO.

(Court of Civil Appeals of Texas. Feb. 11, 1911. Rehearing Denied Feb. 25, 1911.)

1. CARRIERS (§ 347*)—CONTRIBUTORY NEGLI-GENCE—BOARDING CAR.

It is not negligence per se in one desiring to get on board a car with a view of taking passage thereon to attempt to board the car while it is moving.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1346–1397; Dec. Dig. § 347.*]

2. CARRIERS (§ 321*)—BOARDING CAR—MIS-LEADING INSTRUCTIONS.

In an action for injuries to a passenger while attempting to board a car, a charge that, if those in charge of the car were guilty of negligence, there should be a finding for defendant, is misleading.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1326; Dec. Dig. § 321.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by George F. Osborne against the Texas Traction Company. From a judgment for defendant, plaintiff appeals. Reversed, and cause remanded.

Lewis T. Carpenter and W. R. Bishop, for appellant. T. B. Williams and M. B. Templeton, for appellee

BOOKHOUT, J. Appellant, plaintiff in the court below, instituted suit against the Texas Traction Company, appellee, for damages for personal injuries received at Plano, Tex., on November 1, 1908. Plaintiff alleged in his petition that on said date he went to the passenger station of defendant at the town of Plano, intending to become and was a passenger on one of defendant's passenger cars from Plano to Dallas; that, when said car arrived at the station of Plano on its way to

Dallas, it stopped, and the plaintiff, having reached said station prior to the arrival of said car, proceeded with reasonable dispatch, care, and diligence to board said car, but the defendant, its servants and agents in charge of and operating said car, negligently failed to stop same a sufficient length of time to permit or enable plaintiff to board same in safety, and negligently stopped said car at said place an unreasonably short time, and negligently started same again before the plaintiff could board said car, and as plaintiff was in the act of boarding said car, and had his hand on the bar used for the purpose of assisting passengers boarding said car, the servants and agents of defendant in charge of said car and operating the same negligently started the same with a sudden jerk and at a high rate of speed, whereby plaintiff in attempting to board said car was thrown with great violence to the ground, and thereby was injured as is fully set out in his petition; that the agents and servants in charge of said car knew, and by the exercise of reasonable diligence could and would have known, that at the time the car was started plaintiff had not yet boarded same, and had not had reasonable opportunity so to do, and that he was in the act of boarding same, and they negligently and without regard to the safety of plaintiff started the car with a sudden jerk, and at a high rate of speed, and permitted same to be so started before plaintiff had boarded, and before he had had time to board the car, and while he was in the act of so doing, and the car was thus negligently put in motion, and the plaintiff in attempting to board the car, and on account of and by reason of the car being so put in motion, and the motion of the car, was thrown and caused to fall violently to the ground, and was thus injured. The defendant answered by general demurrer and general denial, and specially pleaded that, if the plaintiff was injured, the same was the result of his own careless, negligent, and reckless conduct; that he undertook to board one of the cars of the defendant while the same was in motion, and after it had stopped at Plano station for the usual and reasonable time; and that, after same started and was under headway, plaintiff, without any notice or notification on the part of defendant, its agent or employés, undertook to catch and board the moving car, and in doing so fell. The case was tried on February 4, 1910, and resulted in a verdict and judgment for the defendant. Appellant filed his motion for new trial, which was overruled by the court, and he gave notice of appeal, and in due time perfected his appeal.

Upon the trial the court, at the request of defendant, gave four special charges, reading as follows:

"You are instructed that, if the plaintiff in this case waited until after the car of defendant started from the station before undertaking to actually get aboard the car, he

would not be entitled to recover, and your verdict should be for the defendant."

"If you believe in this case that the car of the defendant stopped the usual and a reasonable length of time for passengers to alight therefrom and for persons intending to board the car to get on the same, and that the plaintiff did not attempt to board the same until after it started, then you will find for the defendant."

"If you believe from the evidence in this case that the plaintiff was not in the act of getting upon the steps of the car at the time it started, but undertook to board the car after it did start, then you will find for the defendant."

"If you believe from the evidence in this case that the defendant's car stopped the usual and a reasonable time at Plano, and that, after it started from the station, plaintiff undertook by walking, trotting, or running after the same to get aboard the same, and in the effort failed, then in this case you will find for the defendant."

The giving of these charges is complained of in four separate assignments of error, which are grouped.

The propositions presented are (1) that a passenger in attempting to board a car at a station after the car has started is not guilty of negligence per se; (2) that it is a question of fact for the jury whether the facts in evidence constitute contributory negligence, and the giving of a charge assuming that such facts, if proved, will amount to contributory negligence, is error.

As to how the appellant sustained the injury, the witness Richardson, who was with appellant at the time, testified: "We left Mr. Roark's house and got to the depot something like four minutes before the arrival of the car, and we were standing right at the depot when the car came up. There were quite a number of people getting on and off, and Mr. Osborne made an effort to get on the car. He had me by the left arm, and pushed me through the crowd to get to the car, and, just as I boarded the bottom steps of the car, it gave a sudden start, just as I went up the steps, and Mr. Osborne, I believe—I am not sure—but I think he, had his arm to the handle next to the body of the car. He was right behind me, pushing up the car with one hand, had hold of the handle with the other one, and, just as I was going up the steps, the car started—just as I thought Mr. Osborne got it—and I looked back just in time to see him hit the ground, and the car ran about twelve, probably a car and a half length, maybe not quite so far. little over a car and a half length, and then stopped, and Mr. Osborne came up and got on the car, and walked right by me through the car. I was still in the vestibule watching him, and he walked in the car and sat down. I saw his face skinned and his hand and chin, and it seemed to me I saw a place on his wrist. I stepped up, and I thought he

had stepped up, and, when I got on the first step, I stepped up on the second to get on. He turned me loose. I was going up the steps when I felt his hand turn me loose. I had not yet reached the platform. The car started off so quick, and somehow he got overbalanced and lost control of himself and fell, and just as I looked around I saw him fall and hit the ground. The car was standing still when I got on, and moved just as I got on the step."

George F. Osborne, the plaintiff, testified: "I went from Athens to Plano on November 1, 1908. I had been up to Mr. Roark's house —he is my brother-in-law—and came down to take the car back to make connection with the T. & N. O. at Dallas. That train goes back something about 7 o'clock now, and I got there just a little bit before the car went to the station. Mr. Roark walked down there with us from the house, and the car came up and there were several getting on and off, and, as the car came in, I told Roark good-bye, and shook hands with him, and then touched Richardson, and told him to let's get on, and about the time Richardson got on the car I came up with him, and somebody in behind me elbowed between us, and I just touched Richardson up, and I believe I was against him, and just about the time he got inside the car it snatched me that way before I could do anything at all, and I couldn't recover myself, and I never could get straight up to catch the car. I didn't turn loose when the car started because I couldn't—I couldn't think to turn it loose. I don't know whether it jerked me a step or two, and, of course, I just clung to it as long as I could, and it hit me on the side of the face. The car was not moving when I tried to get on the car. It was standing still. I had not yet gotten to the bottom step. I was just getting on the bottom step. I could not say whether my foot was on it or not. I don't know how many feet were on the step when it jerked me. I mean by 'jerk' that it started suddenly, and caused me to fall against the ground. I mean the car started quick. I had my left hand hold of the handhold. I didn't have my right hand hold of anything. I had hold of Richardson just before. He had already stepped on. I came up right behind him. I touched him that way on account of his eyes. As soon as it jerked me, I fell right back. I don't know how far I held on it, it scared me so. I know no reason why I cannot tell whether my feet were on the ground or on the step, except that the car jerked me. I had not been drinking that night nor that day. * * * There were other passengers getting on and off all the time Richardson and I were getting on. I don't know whether Richardson was the last man in or not. It strikes me that there was a fellow pushed by me just like you would squeeze into a place. I saw the conductor. He was right in front of Richardson, in a kind of parti-tion. I saw him when I was trying to get on the car. He was up in the car ahead of me. I could see him inside the car. I didn't hear him when he gave two bells to start. I didn't hear him say 'All aboard.' That was a jerk or a kind of a lurch. It didn't pull my hand loose, but kind of jerked me sideways. I held on to it as long as I could until it flummoxed me. There were people getting on and off while I was standing there waiting to help Richardson on."

The decisions seem to be uniform in holding that it is not negligence per se in one desiring to get on board a car with the view of taking passage thereon to attempt to board the same while the car is moving. The charges complained of assumed as a matter of law that, if appellant attempted to board the car after it had started, he was guilty of contributory negligence, and hence was not entitled to recover. In this respect the charges did not announce a correct proposition of law. Whether appellant in attempting to board the car after it had started was guilty of contributory negligence was a question for the jury, and depends upon whether appellant was using such care and caution as an ordinarily prudent person would have used under the same or similar circumstances. Railway v. Stewart, 14 Tex. Civ. App. 703, 37 S. W. 770; Mills v. Railway, 94 Tex. 242, 59 S. W. 875, 55 L. R. A. 497; Bennett et al. v. Railway, 11 Tex. Civ. App. 423, 32 S. W. 834; Railway v. Shannon, 50 Tex. Civ. App. 194, 111 S. W. 1060.

The court had correctly charged the jury in his main charge that if they believed from the evidence "that the plaintiff, at the time and place charged in his petition intending to become a passenger on one of defendant's cars, undertook to board said car, and you find that those in charge of said car failed to stop the car a sufficient length of time to permit the plaintiff to board and enter said car, and started said car with a jerk and at a high rate of speed, if they did, while plaintiff was in the act of boarding the same, and you believe from the evidence that in starting said car at the time and in the manner in which it was started that those in charge of said car failed to exercise that high degree of care and caution that, under like circumstances, would have been usually exercised by very prudent and careful persons, and you further find from the evidence that as the direct and proximate result of said failure, if any, to stop the car a sufficient length of time for plaintiff to board the same, or that by reason of a sudden jerk of said car, if there was a sudden jerk, plaintiff suffered any of the injuries complained of, you will find for the plaintiff."

Error is assigned to a clause of the charge reading as follows: "If you fail to find that those in charge of the car were not guilty of negligence, you will find for the defendant." This charge is misleading, and should be corrected on another trial.

For the error pointed out in the first four assignments, the judgment is reversed and the cause remanded.