## TEXAS POWER & LIGHT CO. v. MARTIN.*
### (No. 6204.)

(Court of Civil Appeals of Texas. Austin.
June 9, 1920. Rehearing Denied
Oct. 13, 1920.)

**1. Damages ⬦54—Mental anguish because of disfigured hand not too remote to be subject of compensation.**

In action for personal injuries whereby plaintiff sustained a scarred and disfigured hand through coming in contact with an electric wire belonging to defendant, mental anguish because of such injuries *held* recoverable and not too remote to be the subject of compensation.

**2. Damages ⬦132(8)—$10,000 held not excessive for hand permanently disfigured by electric wire.**

$10,000 *held* not excessive, where a minor sustained an injury resulting in permanently scarred and disfigured hand through coming in contact with an electric wire.

Appeal from District Court, McLennan County; H. M. Richey, Judge.

Action by J. A. Martin, for himself and as next friend to his minor son, Joe Townsend Martin, against the Texas Power & Light Company. From a judgment setting aside former judgment as to the minor and rendering judgment for him in an increased sum, defendant appeals. Affirmed.

Templeton, Beall, Williams & Callaway, of Dallas, and Sanford & Harris, of Waco, for appellant.

Tom M. Hamilton and J. A. Kibler, both of Waco, for appellee.

BRADY, J. This suit was instituted by J. A. Martin, for himself and as next friend to his minor son, Joe Townsend Martin, against Texas Power & Light Company, for damages, alleged to have been sustained by the plaintiffs on account of injuries to the minor plaintiff, through his having come in contact with an electric wire belonging to the defendant and used for the distribution of electricity in the city of Waco. Plaintiffs sought also to set aside a judgment, which had been rendered by the same judge in the same court, based, in part at least, upon a supposed settlement agreement, in which there had been awarded $500 to the plaintiffs, apportioned as follows: To J. A. Martin, the sum of $100, and to Joe Townsend Martin, a minor, the sum of $400, and the deposit of an additional sum of $150 in the registry of the court for medical and surgical bills for the future treatment of the minor.

The case was submitted on special issues to the jury, and, upon the verdict of the jury, the court rendered judgment, setting aside the former judgment in so far as the minor, Joe Townsend Martin, was concerned, but leaving it undisturbed as to the plaintiff, J. A. Martin, and rendered judgment for the minor in the sum of $10,000, the amount of damages found by the jury.

The special issues submitted and the answers of the jury are as follows:

"Question No. 1: Was J. A. Martin in a weakened and enfeebled condition, mentally and physically, at the time he made the settlement for $350 as shown by the evidence? Answer 'Yes' or 'No.' Answer: Yes.

"Question No. 2: Did said J. A. Martin, at the time of said settlement, know the facts surrounding the accident to his son, Joe Townsend Martin, the nature and extent of his injuries, or his legal rights in reference thereto? Answer: No.

"Question No. 3: Did defendant's claim agent, at the time of said settlement, represent to said J. A. Martin that defendant was legally not to blame for the injuries to Joe Townsend Martin, and that said Joe Townsend Martin was wholly to blame? Answer 'Yes' or 'No.' Answer: Yes.

"Question No. 4: Did defendant's claim agent, at the time of said settlement represent to said J. A. Martin that the injuries to Joe Townsend Martin were not permanent and that he would recover therefrom and have good use of his hand? Answer: Yes.

"Question No. 5: Did defendant's claim agent, at the time of said settlement, represent to said J. A. Martin that the $350 offered in settlement was all or more than he could get for the injuries to Joe Townsend Martin in court? Answer: Yes.

"Question No. 6: Did J. A. Martin believe such representation, or representations, and was he induced thereby to make said settlement? Answer: Yes.

"Question No. 7: At the time the said J. A. Martin made said settlement, had he consulted any physician as to the nature. and extent of

Joe Townsend Martin's injury, or any attorney as to the legal rights of said Joe Townsend Martin in respect thereto? Answer: No.

"Question No. 8: At the time of the accident to Joe Townsend Martin, and at the time of said settlement, was said J. A. Martin confined to his bed? Answer: Yes.

"Question No. 9: At the time the said J. A. Martin signed the settlement agreement introduced in evidence, did he read, know, or understand the contents thereof? Answer: No.

"Question No. 10: Did defendant's claim agent, at the time the said J. A. Martin signed said settlement agreement, represent to him that it was necessary for him to sign the same for the purpose of receiving payment of the $350 under the settlement he made? Answer: Yes.

"Question No. 11: Under the settlement agreement made between the defendant's claim agent and the said J. A. Martin, was J. A. Martin to receive the $350 to be paid thereunder? Answer: Yes.

"If you answer question 11 in the negative, then answer question 12.

"Question No. 12: Under the settlement agreement, was the amount to be apportioned by the court between J. A. Martin and Joe Townsend Martin? ———.

"Question No. 13: Did the said J. A. Martin authorize, personally or through any other person, Attorney R. O. Stotter to represent him in settling with the defendant for the injury to Joe Townsend Martin? Answer: No.

"Question No. 14: Did the said J. A. Martin personally or through any other person authorize Attorney R. O. Stotter to represent him and his son Joe Townsend Martin in said case of J. A. Martin et al. v. Texas Power & Light Company, No. 2072, Seventy-Fourth district court, McLennan county, Tex.? Answer: No.

"Question No. 15: Was J. A. Martin present in court, or was he represented by any authorized attorney at the time the judgment in said case No. 2072, J. A. Martin et al. v. Texas Power & Light Co., in Seventy-Fourth district court, McLennan county, was rendered? Answer: No.

"Question No. 16: Was the defendant guilty of negligence in permitting its wires in question to pass through the branches of the mulberry tree, under all the conditions and circumstances shown by the evidence? Answer 'Yes' or 'No.' Answer: Yes.

"Question No. 17: Did the defendant permit the insulation on its wires at the time and place in question to become worn and defective? Answer 'Yes' or 'No.' If you have answered question No. 17, 'No,' then you need not answer question 18. If you have answered said question 17, 'Yes,' then answer question 18. Answer: Yes.

"Question No. 18: Was the defendant, under all the conditions shown by the evidence, guilty of negligence in so doing? Answer: Yes.

"Question No. 19: Did the defendant, at the time and place, fail to inspect and maintain its wires in a safe condition? Answer 'Yes' or 'No.' Answer: Yes.

"Question No. 20: If you have answered question 19, 'No,' then you need not answer question 20. If you have answered question No. 19, 'Yes,' then answer question 20. Was the defendant, under all the conditions shown in the evidence, guilty of negligence in so failing? Answer 'Yes' or 'No.' Answer: Yes.

"Question No. 21: If in reply to either of questions 16, 18, or 20 you have answered that defendant was guilty of negligence, then was such negligence the proximate cause of the injury to Joe Townsend Martin? Answer 'Yes' or 'No.' Answer: Yes.

"Question No. 22: Did the plaintiff, Joe Townsend Martin, knowing that said wires were there, and knowing their dangerous character and the dangers incident to his coming in contact with them, take hold of same? Answer 'Yes' or 'No.' Answer: No.

"Question No. 23: If you have answered question 22, 'No,' then you need not answer this question. If you have answered said question, 'Yes,' then was he guilty of negligence in so doing? Answer 'Yes' or 'No.' Answer: ———.

"Question No. 24: If you have answered question 23, 'No,' then you need not answer this question. If you have answered said question, 'Yes,' then was such negligence the proximate cause, or did it proximately contribute to cause his said injury? Answer 'Yes' or 'No.' Answer: ———.

"Question No. 25: Is the injury to Joe Townsend Martin permanent? Answer 'Yes' or 'No.' Answer: Yes.

"Question No. 26: If you have answered question 25, 'No,' then you need not answer this issue. If you have answered said question, 'Yes,' then was the said Joe Townsend Martin guilty of negligence in not procuring and securing proper medical aid and treatment for his said injury, if you find that he did not do so? Answer 'Yes' or 'No.' Answer: No.

"Question No. 27: If you have answered question 26, 'No,' then you need not answer this question. If you have answered said question, 'Yes,' then was such negligence the proximate cause, or did it proximately contribute to cause said injury to be or become permanent? Answer 'Yes' or 'No.' - Answer: ———.

"Question No. 28: What amount of money if paid in cash would reasonably compensate the plaintiff, Joe Townsend Martin, for the injury and damage, if any you may find and believe from the evidence he has sustained? Answer: $10,000."

The questions submitted to the jury sufficiently indicate the issues on the trial, and, while the evidence is conflicting as to some of the issues, the findings of the jury are each supported by evidence.

### Opinion.

The first question raised in the brief relates to the overruling of a special exception of appellant, and to the argument of counsel for the appellee as to mental anguish claimed to have been suffered by appellee because of his scarred and disfigured hand. The specific claim is that such sufferings are too remote to be the subject of compensation, and to constitute recoverable damages.

[1] This contention was considered by this court in the recent case of Texas Electric Railway v. Whitmore (decided April 14, 1920) 222 S. W. 644. We there denied the conten-

tion of appellant, and held that such damages are recoverable in a proper case; and, in here overruling the assignments raising this question, we refer to the Whitmore Case and authorities there cited.

[2] It is also claimed that the judgment should be reversed because the verdict is excessive. We have carefully considered this question in connection with the facts in the record, and, while the verdict is large, perhaps in excess of what we would have awarded, it is not so large as to justify us in disturbing the verdict. We discover nothing in the record to indicate that the jury were influenced by passion, prejudice, or other improper influence; nor does the size of the verdict justify such a conclusion. Therefore the assignments raising this point are overruled. Burnett v. Anderson, 207 S. W. 540; Ry. Co. v. Allen, 208 S. W. 739; Freeman v. Johnson, 136 S. W. 275, 276; Ry. Co. v. Lacy, 86 Tex. 244, 24 S. W. 270; Ry. Co. v. Jackson, 38 Tex. Civ. App. 201, 85 S. W. 446; Ry. Co. v. Vance, 41 S. W. 167–170.

There are numerous other assignments in the brief, but the volume of business pending in this court will not permit a discussion of them. It suffices to say that each has been carefully considered, is regarded as without merit and as showing no reversible error. They are therefore all overruled.

The judgment will be affirmed.

Affirmed.